**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Renee Denean Petty,<br><br>    Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Commissioner of Social Security,<br><br>    Defendant. | No. CIV 12-217-TUC-LAB<br><br>**ORDER** |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. *See* FED.R.CIV.P. 73; (Docs. 11, 14).

The final decision of the Commissioner is not "supported by substantial evidence and free from legal error." *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). Specifically, the ALJ improperly discounted the treating physician's opinion of disability. The case will be remanded for payment of benefits.

PROCEDURAL HISTORY

On May 2, 2009, Petty constructively filed an application for disability insurance benefits and supplemental security income. (Tr. 25, 106)   She alleged disability beginning on

November 17, 2008[1], due to "Depression, Migraines, Fibromyalgia, Neuropathy, Anxiety, Arnold[-]Chairi Malformation[2] Type 1, Osteoarthritis, Carpal Tunnel Syndrome, Sinus Issues, [and] Low Vitamin D." (Tr. 25, 119) Her claim was denied initially (Tr. 82-85) and upon reconsideration (Tr. 87-90). Petty requested review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) Norman R. Buls on December 15, 2010. (Tr. 91, 25) In his decision, dated January 18, 2011, the ALJ found Petty was not disabled. (Tr. 25-36).

Petty appealed and submitted additional exhibits, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-6); *Bass v. Social Sec. Admin.*, 872 F.2d 832, 833 (9th Cir. 1989). Petty subsequently filed this action appealing the Commissioner's final decision. (Doc. 1); *see* 20 C.F.R. § 422.210(a). She filed her opening brief on September 4, 2012. (Doc. 17) She argues the Commissioner erred when he failed to properly credit her subjective testimony of disability, failed to properly credit the opinions of two treating sources, and failed to include in the record documents she submitted for the first time to the Appeals Council. *Id*.

The Commissioner filed a responsive brief on October 4, 2012. (Doc. 18) Petty filed a reply on November 13, 2012. (Doc. 21)

Claimant's Work History and Medical History

In the fifteen years prior to her alleged disability onset, Petty worked as a laptop assembler, cashier, fabrication associate, manufacturing specialist, travel counselor, retail stocker, and manufacturing probe specialist. (Tr. 120) She was laid off from her job with Texas Instruments at the end of 2008. (Tr. 67, 77, 120); (Doc. 17, p. 3) Nevertheless, she believes she

---

[1] Petty's alleged onset date was later amended to April 17, 2009. (Tr. 67)

[2] "The Arnold-Chiari malformation is an abnormality in the formation of the brain stem." *The Merck Manual of Diagnosis and Therapy* 2224 (Mark H. Beers, et al. eds., 17th ed. 1999).

- 2 -

1 would have had to quit her job within four or five months anyway due to constant pain from her
2 fibromyalgia and migraines. (Tr. 67, 77, 120); (Doc. 17, p. 3)

Physical Impairments

In January of 2001, Petty underwent a suboccipital craniotomy to treat a Chiari I malformation. (Tr. 443) In May of 2001, she was still experiencing some numbness in the arms and legs, neck pain, and headaches on the left side. (Tr. 438)

In July of 2008, Petty sought treatment for left-hand pain she had been having since October of 2007. (Tr. 225) David Siegle, M.D., diagnosed left medial epicondylitis, left index trigger finger, and left carpal tunnel syndrome. (Tr. 225) Petty subsequently underwent a left carpal tunnel release and left index trigger finger release. (Tr. 212) In September of 2008, Siegel wrote that Petty's "left hand has improved substantially, and her elbow pain has basically resolved with conservative management." (Tr. 222) In October of 2008, Petty underwent a right carpal tunnel release. (Tr. 210)

The medical record contains treatment notes from University Orthopedic Specialists. (Tr. 285-89, 356-57) In May of 2009, Michael Miller, M.D., assessed Petty as follows: "Bilateral knee degenerative changes. History of multiple knee surgeries including proximal and distal patellar realignment and numerous arthroscopic surger[ies]." (Tr. 285) In August of 2009, Miller wrote: "She is at a young age to consider knee replacement however this is a distinct possibility in the near future." (Tr. 357)

The medical record contains treatment notes from United Community Health Center from August of 2008 to May of 2009. (Tr. 268-273) In April of 2009, Marie Benitez, M.D., summarized Petty's condition as (1) fibromyalgia syndrome, sleep disorder, (2) lumbar strain, (3) low vitamin D, (4) migraines. (Tr. 270) In December of 2010, Benitez completed a Medical Work Tolerance Recommendations form. (Tr. 603-04) Benitez opined Petty could work only seven hours per day for 3-4 days per week due to her frequent migraines. *Id.* Each work day, she could stand for one hour total. *Id.* She could sit for six hours total but for only 30 minutes at a stretch. *Id.* She could sit in a clerical position and occasionally reach above

shoulder level, but she should avoid other postures such as bending, crouching, kneeling, and squatting. *Id*. She should avoid fine movements such as typing and small assembly. *Id*.

In July of 2009, Petty was examined by Enrique Suarez, M.D., for the state disability determination service. (Tr. 298) His impression was as follows: "1. History of depression. She seems to be improving somewhat with Effexor. 2. Migraines, probably tension. 3. Fibromyalgia is related to the depression and poor sleeping. 4. History of Arnold[-]Chiari Malformation type I after the surgery in June 2006. She appeared to have responded. 5. Minimal degenerative joint disease of the knees. 6. Status post osteotomies. 7. Bilateral carpal tunnel syndrome, status post surgery with good results. 8. Some degree of sinusitis, status post surgery. 9. Low Vitamin D, she is on vitamins." (Tr. 300) Suarez concluded "she may have some limitation with lifting over 50 pounds occasionally and 25 pounds frequently . . . ."

In July of 2009, John Fahlberg, M.D., reviewed the record and completed a Physical Residual Functional Capacity Assessment for the state disability determination service. (Tr. 312) He concluded Petty could lift and/or carry 10 pounds frequently and 20 pounds occasionally. (Tr. 313) She could sit with normal breaks for 6 hours in an 8-hour day. *Id*. She should only occasionally climb, kneel, crouch, or crawl. (Tr. 314) She should avoid concentrated exposure to extreme cold, vibration, and hazards such a machinery and heights. (Tr. 316) He found Petty's symptoms suffered from "obvious exaggeration." (Tr. 317) He further found the consultative examiner's opinion to be "a bit excessive" considering her "knee [osteoarthritis] if nothing else." (Tr. 318)

In November of 2009, Martha A. Goodrich, M.D., reviewed Fahlberg's report for the state disability determination service and affirmed his opinions. (Tr. 431)

Mental Impairments

The record contains treatment notes from La Frontera Center, Inc., from August of 2003 to May of 2009. (Tr. 362-404) In August of 2003, Bruce Roberts, M.D., offered an assessment: "This is a 30-year-old woman who has suffered from recurrent episodes of major depression over the past 8 years. Her depression has been worse recently due to recent losses and acute

- 4 -

stressors. [S]he reports that she has been more irritable and losing her temper easily and yelling at the kids. She also has daily migraine headaches." (Tr. 404) His diagnosis reads as follows: "Axis I Major Depressive Disorder, recurrent, moderate; Bipolar Affective Disorder II, provisional. Axis II No diagnosis. Axis III Migraine headaches. Axis IV Moderate. Axis V Current GAF of 45." In May of 2009, Elizabeth Siwarski, APRN/BC, offered the following clinical impression: "[History] of chronic treatment resistant depression w/ persistent insomnia . . . . Client ha[s] failed trials [with] topomax, eurontin, [and] zonegran. Bipolar disorder was ruled out by previous providers; Aunt w/ bipolar disorder and mother w/ [history] of depression. Treatment options discussed including trial of lithium if labs are normal." (Tr. 367) In December of 2010, Siwarski completed a Mental Work Tolerance Recommendations form. (Tr. 595-96) She found Petty markedly limited in "ability to maintain attention and concentration," "ability to perform activities within a schedule," "ability to complete a workday and workweek without psychologically based symptoms," and "ability to get along with co-workers or peers." *Id*. She found additional moderate limitations in the areas of understanding and memory, concentration and persistence, social interaction, and adaptation. *Id*.

In July of 2009, Petty was examined by Noelle Rohen, Ph.D., for the state disability determination service. (Tr. 293) Rohen offered a diagnostic impression "based on clinical interview and any available records: Axis I: 300.02 Generalized Anxiety Disorder, 296.32 Major Depressive Disorder, Recurrent, Chronic, Moderate, 307.89 Pain Disorder Assoc. With both Psychological Factors and a [general medical condition]; Axis II: V71.09 No Diagnosis; Axis III: Defer to medical records." (Tr. 295) She found Petty "presents with primarily physical complaints, but admits to depression and anxiety." (Tr. 295) Rohen noted that although Petty's psychiatric conditions are chronic, they do not appear to be affecting her ability to work except that they may influence her level of pain and her ability to cope. (Tr. 295) She concluded that Petty's "depression and anxiety may be expected to impact persistence based upon their impact on her pain." (Tr. 296)

In August of 2009, Randall J. Garland, Ph.D., reviewed the medical record for the state disability determination service and completed a Psychiatric Review Technique form. (Tr. 325)

- 5 -

He documented (1) affective disorder (major depressive disorder), (2) anxiety-related disorder (generalized anxiety disorder), and (3) somatoform disorder (pain disorder associated with both psychiatric factors and a general medical condition). (Tr. 325-31) He found moderate limitation in maintaining concentration, persistence, or pace and mild limitation in activities of daily living and maintaining social functioning. (Tr. 335)

Garland also completed a Mental Residual Functional Capacity Assessment. (Tr. 321) He found moderate limitation in Perry's "ability to maintain attention and concentration for extended periods," "ability to complete a normal work day and work week" and "ability to respond appropriately to changes in the work setting." (Tr. 321-22) He opined Perry could perform unskilled work which required only the ability to understand, carry out, and remember simple instructions. (Tr. 323)

In November of 2009, Raymond Novak, M.D., reviewed Garland's assessment for the state disability determination service and concurred with his opinions. (Tr. 430)

Third Party Statement

In June of 2009, Petty's aunt, Karen M. Kasper, submitted a Third Party Function Report describing Petty's impairments. (Tr. 185-192) Kasper explained that she has known Petty all her life, sees her on holidays, visits with her off and on, and talks with her on the phone often. *Id*. She stated that "[Petty] used to be a very motivated individual that had no trouble getting things done." (Tr. 192) She continued, "It's very sad to see how her life has changed due to migraines and fibromyalgia." *Id*.

Hearing Testimony

On December 15, 2010, Petty appeared with counsel at a hearing before ALJ Norman R. Buls. (Tr. 64) At the time of the hearing, Petty was 38 years old. (Tr. 68) She graduated from high school and has two years of college. (Tr. 68)

Petty testified that she cannot work due to severe migraines, bad knees, and overall pain from fibromyalgia. (Tr. 70) Since April of 2009, she has been having migraines four days per

1 week. (Tr. 73) When she has a migraine, she lies in the dark all day with no noise. (Tr. 73)
2 She cannot take medication to alleviate her pain because she has chronic kidney disease. (Tr.
3 73, 552)

4 Petty further testified that her knees limit her ability to perform job related activities. (Tr.
5 74) She can walk comfortably for only 10 minutes at a time (Tr. 74) She can sit for 30 minutes
6 before her knees begin to bother her. (Tr. 75) She tries to sit in a recliner and elevate her knees
7 four times a day, for 20 minutes at a time, to prevent swelling. (Tr. 75)

8 Petty also feels pain and numbness in her hands. (Tr. 75) She can type for only three
9 minutes at a time. (Tr. 76)

10 Petty receives treatment at La Frontera for depression. (Tr. 77) She stated, "I'll cry at
11 the drop of a hat. I seclude myself; I'll stay in my room. I get overwhelmed. Sometimes I'll
12 even roll up in a ball and just start crying for anything." (Tr. 77)

13 In his decision, dated January 18, 2011, the ALJ found Petty was not disabled. (Tr. 25-
14 36) He found she could perform simple, unskilled sedentary work. (Tr. 30, 32-33, 312) He
15 based his findings largely on the opinions of the non-examining state agency medical
16 consultants, John Fahlberg and Randall Garland, and the consultative examiner, Noelle Rohen.
17 (Tr. 30, 32-33, 312)

18
19 CLAIM EVALUATION

20 Social Security Administration (SSA) regulations require that disability claims be
21 evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920; *Baxter*
22 *v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of
23 whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4),
24 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.*

25 If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two
26 which requires a determination of whether the claimant has a "medically severe impairment or
27 combination of impairments." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In making a
28 determination at step two, the ALJ uses medical evidence to consider whether the claimant's

impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." *Id*. If the ALJ concludes the impairment is not severe, the claim is denied. *Id*.

Upon a finding of severity, the ALJ proceeds to step three which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC)[3] to perform past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If yes, then the claim is denied. *Id*. If the claimant cannot perform any past work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

In determining whether the claimant retains the ability to perform other work, the ALJ may refer to the Medical Vocational Guidelines ("the grids") promulgated by the SSA. *See* 20 C.F.R. Pt. 404, Subpt. P, App.2; *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576-577 (9th Cir. 1988). The grids categorize jobs according to their exertional requirements such as sedentary work, light work, or medium work. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The grids calculate whether or not the claimant is disabled based on the claimant's exertional ability, age, education, and work experience. *Id.* The grids are a valid basis for denying claims where they completely and accurately describe the claimant's

---

[3] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

- 8 -

abilities and limitations. *Id.* at 1101-02. If the claimant has only exertional limitations, the claim may be resolved based only on the grids. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006).

If the claimant has significant non-exertional limitations, the grids do not apply. *Penny v. Sullivan,* 2 F.3d 953, 958-959 (9th Cir.1993). "Non-exertional limitations are limitations that do not directly affect a claimant's strength." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). Mental limitations, for example, are non-exertional. *Id.* at 1340-41. If significant non-exertional limitations prevent the claimant from performing the full range of work in any exertional category, the ALJ must take the testimony of a vocational expert to deny the claim. *Id.* at 1341.

If the claimant has both exertional and non-exertional limitations, the ALJ must consult the grids first before considering the testimony of a vocational expert at step five. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006). If the grids direct a finding of disability, that finding must be adopted by the Commissioner. *Lounsburry,* 468 F.3d at 1116.

The ALJ's Findings

At step one of the disability analysis, the ALJ found Petty "has not engaged in substantial gainful activity since November 17, 2008, the [originally] alleged onset date . . . ." (Tr. 27). At step two, he found Petty "has the following severe impairments: right carpal tunnel syndrome, migraines, degenerative joint disease (bilateral knees), obesity, and anxiety . . . ." (Tr. 27) At step three, the ALJ found Petty's impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Tr. 27)

The ALJ then analyzed Petty's residual functional capacity (RFC). He found Petty "has the residual functional capacity to perform the full range of sedentary work . . . except that, due to her mental impairment, the claimant is limited to simple, unskilled work. . . ." (Tr. 29)

At step four, the ALJ found Petty was unable to perform any past relevant work. (Tr. 35) At step five, the ALJ found that Petty was not disabled using the grids. (Tr. 35)

## STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A] claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993) (*quoting Marcia v. Sullivan,* 900 F.2d 172, 174 (9th Cir. 1990)).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a preponderance." *Id.*

"Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

In evaluating evidence to determine whether a claimant is disabled, the opinion of a treating physician is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir. 1993). The Commissioner may reject a treating physician's uncontradicted opinion only if he sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating physician's opinion is contradicted by another doctor, the Commissioner may reject that opinion only if he provides specific and legitimate reasons supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. No distinction is drawn "between

a medical opinion as to a physical condition and a medical opinion on the ultimate issue of disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Id.* "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.

"Where medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." *Magallanes,* 881 F.2d 747, 751 (9th Cir. 1989) (punctuation omitted). The Commissioner's finding that a claimant is less than credible, however, must have some support in the record. *See Light v. Social Security Administration,* 119 F.3d 789 (9th Cir. 1997).

The ALJ need not accept the claimant's subjective testimony of disability, but if he decides to reject it, "[]he must provide specific, cogent reasons for the disbelief." *Lester,* 81 F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

DISCUSSION

The ALJ committed legal error when he improperly discounted the opinion of Petty's treating physician, Marie Benitez, M.D. *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). He also erred when he discounted the opinion of the psychiatric nurse, Elizabeth Siwarshi, APRN/BC. The court does not reach Petty's remaining claims of error.

"Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). The

Commissioner may reject the treating physician's contradicted opinion[4] only if he sets forth "specific and legitimate reasons supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1996) (punctuation modified); *see also Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (applying the "specific and legitimate" test). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). "The ALJ must do more than offer his conclusions." *Id*. "He must set forth his own interpretations and explain why they, rather than the doctor['s], are correct." *Id*.

If the treating source's opinion "is well-supported by medically and acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it must be given "controlling weight." 20 C.F.R. § 404.1527(c)(2); § 416.927(c)(2). If the treating source's opinion is not given controlling weight, the ALJ must nevertheless analyze other factors such as the length, nature, and extent of the treating relationship; the supportability and consistency of the opinion; and the degree of medical specialization possessed by the treating source. 20 C.F.R. § 1527(d)(2 - 6); § 416.927(d)(2- 6); *see also Sameena, Inc. v. U. S. Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998) ("[A] federal agency is obliged to abide by the regulations it promulgates."). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188 at *4 (July 2, 1996) In sum, the ALJ must "give good reasons" for the weight given to the treating source's opinion. 20 C.F.R. § 404.1527(c)(2); § 416.927(c)(2).

In this case, Benitez opined that Petty can work only seven hours per day and two to three days per week because of her physical limitations and her migraines. (Tr. 603-04) The ALJ rejected her opinions and found Petty had the physical ability to perform sedentary work relying primarily on the opinion of the non-treating, non-examining state agency medical

---

[4] Benitez's opinion is contradicted by the examining consultant, Enrique Suarez, M.D. (Tr. 298)

- 12 -

consultant, John Fahlberg, M.D. The ALJ's stated reasons for doing so are not "specific and legitimate."

The ALJ's reasoning reads in full as follows: "Dr. Benitez's opinion is without substantial support from the other evidence of record, which obviously renders it less persuasive." (Tr. 32) The ALJ's stated objection is not legally sufficient.

The ALJ's stated rationale is simply a conclusory statement of his opinion. The ALJ, however, "must do more than offer his conclusions." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). He must cite to the record to explain what evidence contradicts Benitez's opinion and what evidence supports the contrary opinion of the state agency medical consultant. *Id.* The ALJ "must set forth his own interpretations and explain why they, rather than the doctor['s], are correct." *Id*. This, the ALJ failed to do.

The Commissioner argues that Benitez's opinions are inconsistent with the findings and opinions of the examining state agency physician Suarez. (Doc. 18, p. 19) He further argues that Benitez's opinion is inconsistent with Petty's activities of daily living. *Id*., pp. 19-20. The ALJ, however, did not make these arguments in his decision, and this court may not consider them. *Stout v. Commissioner, Social Sec. Admin*. 454 F.3d 1050, 1054 (9th Cir. 2006); *see also Wilson v. Commissioner of Social Sec.*, 378 F.3d 541, 546 (6th Cir. 2004) ("A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion . . . .").

The court further finds that the ALJ failed to properly analyze the opinion of Elizabeth Siwarski, APRN/BC.

In December of 2010, Elizabeth Siwarski, APRN/BC, completed a Mental Work Tolerance Recommendations form. (Tr. 595-96) She found Petty markedly limited in "ability to maintain attention and concentration," "ability to perform activities within a schedule," "ability to complete a workday and workweek without psychologically based symptoms," and "ability to get along with co-workers or peers." *Id*. She found additional moderate limitations

- 13 -

1  in Perry's understanding and memory, concentration and persistence, social interaction, and
2  adaptation. *Id.*

3  The ALJ noted that Siwarski is not a physician or psychologist and therefore is not an
4  "accepted medical source." He then stated that "I have considered Nurse Siwarski's Mental
5  Work Tolerance Recommendations and afford the same little weight in relation to how the
6  claimant's mental impairments affect her ability to work." (Tr. 31) The ALJ's analysis is
7  legally insufficient.

8  The ALJ is correct in observing that an Advanced Practice Registered Nurse is not
9  classified by the Social Security Administration as an "acceptable medical source" and therefore
10 is not given the deference accorded to a physician or psychologist. *See* 20 C.F.R. 404.1513,
11 416.913. Nevertheless, "medical sources who are not acceptable medical sources" "are
12 important and should be evaluated on key issues such as impairment severity and functional
13 effects, along with the other relevant evidence in the file." *Tippett v. Commissioner of Social*
14 *Sec.*, 2011 WL 6014015, 7 (D.Or. 2011) (quoting SSR 06-03p, at *3). "Factors the ALJ should
15 consider when determining the weight to give an opinion from these 'important' sources . . .
16 include: The length of time the source has known the claimant and the number of times and
17 frequency that the source has seen the claimant, the consistency of the source's opinion with
18 other evidence in the record, the relevance of the source's opinion, the quality of the source's
19 explanation of her opinion, and the source's training and expertise." *Tippett v. Commissioner*
20 *of Social Sec.*, 2011 WL 6014015, 7 (D.Or.2011) (quoting SSR 06-03p, at *4).

21 Here, the ALJ stated in a conclusory fashion that he gave Siwarski's opinions little
22 weight. He did not explain why he discounted her opinions. This was error. An ALJ is free
23 to discount testimony from other sources, but as the Commissioner concedes, he must give
24 "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir.
25 2012); (Doc. 18, p. 20). The ALJ here failed to do that.

26 The Commissioner notes that Siwarski's opinions are inconsistent with the findings and
27 opinions of the examining state agency examining consultant, Rohen. (Doc. 18, p. 21)
28 Accordingly, he argues, the ALJ could properly discount Siwarski's opinions. The ALJ,

- 14 -

however, did not make this argument in his decision, and this court may not consider it. *Stout v. Commissioner, Social Sec. Admin*. 454 F.3d 1050, 1054 (9th Cir. 2006).

Conclusion

The ALJ failed to give specific and legitimate reasons for discounting the opinion of Petty's treating physician, Marie Benitez. Accordingly, Benitez's opinions should be credited as a matter of law. *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) ("Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion as a matter of law.").

"Where we conclude that a claimant's testimony or a doctor's opinion should have been credited and, if credited, would have led to a finding of eligibility, we may order the payment of benefits." *Regennitter v. Commissioner*, 166 F.3d 1294, 1300 (9th Cir. 1999); *see also Ghokassian v. Shalala*, 41 F.3d 1300, 1304 (9th Cir. 1994) (remanding for payment of benefits where the Secretary did not provide adequate reasons for disregarding the treating physician's opinion).

In this case, the ALJ improperly discounted the opinion of Petty's treating physician. Crediting this opinion indicates that Petty cannot work full time and is therefore disabled. *See* SSR 96–8p; *see also Rollins v. Massanari*, 261 F.3d 853, 859 (9th Cir. 2001) ( "An ability to keep to an 8–hour a day, 5–day a week schedule without accumulating too many absences is a pre-requisite for many jobs."); *Bladow v. Apfel*, 205 F.3d 356, 359 (8th Cir. 2000); *see, e.g., Ryan v. Commissioner of Social Sec.*, 528 F.3d 1194, 1196, 1202 (9th Cir. 2008) (Claimant was disabled because she "would not be able to maintain regular attendance in the work place due to extreme anxiety and continuing depression, especially when [placed] in a work like situation . . . .").

There are no outstanding issues to be resolved. Remand of the case would serve no useful purpose. *See Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996) ("We may direct an award of benefits where the record has been fully developed and where further administrative

1 proceedings would serve no useful purpose."). A finding of disability should be entered. *See*
2 *also Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to
3 decide the issue again would create an unfair 'heads we win; tails, let's play again' system of
4 disability benefits adjudication.").

6       IT IS ORDERED that the final decision of the Commissioner is reversed. The case is
7 remanded for payment of benefits. The Commissioner may adopt Petty's amended onset date,
8 April 17, 2009. (Tr. 67)
9       The Clerk of the Court is directed to prepare a judgment and close this case.

11       DATED this 20th day of June, 2013.

*Leslie A. Bowman*
Leslie A. Bowman
United States Magistrate Judge